RISTON et al.

v.

BUTLER et al.; Menke et al., Appellees.[1]

[Cite as *Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010572.

Decided May 10, 2002.

---

1. The appellants in this case are Louis A. Raimond, Edward A. Miller, and the law firm of Peirce, Raimond and Coulter, P.C. (formerly Peirce, Raimond, Osterhout, Wade, Carlson & Coulter, P.C.), all of whom had sanctions imposed against them by the trial court. The trial court also imposed sanctions against Dawana Riston, but she has not appealed. We have sua sponte removed this case from the accelerated calendar.

Eli Namanworth, for appellee Joseph Menke.

Goodman & Goodman and Donald P. Morrisroe, for appellees Lionel Socol and Colman Hanish Realty.

Wolterman & Dusing, Jeffrey Mando, Jennifer L. Langen and Adams Stepner, for appellants Louis Raimond, Edward A. Miller, and Peirce, Raimond, Osterhout, Wade, Carlson & Coulter, P.C., now known as Peirce, Raimond & Coulter, P.C.

---

MARK P. PAINTER, Presiding Judge.

{¶ 1} In this case we are asked to decide whether, based on the information then possessed by an attorney and a law firm, the filing of a lawsuit constituted, as a matter of law, either a willful violation of Civ.R. 11 or frivolous conduct under R.C. 2323.51. We conclude that under the circumstances of this case, it was neither and reverse the judgment of the trial court.

{¶ 2} Appellees Joseph Menke, Lionel Socol, and Colman Hanish Realty ("Menke") moved for Civ.R. 11 sanctions against appellant Louis A. Raimond and for R.C. 2323.51 sanctions against Dawana Riston and against appellants Raimond, Edward A. Miller, and the law firm of Peirce, Raimond, Osterhout, Wade, Carlson & Coulter, P.C., now known as Peirce, Raimond & Coulter, P.C. (We refer to the three appellants as "the firm" when discussing the R.C. 2323.51 sanctions.) The firm represented Riston and her five children, Jasmine Riston, Jerrin Griffin, Andrea Riston, Aqui Riston, and Deaunna Johnson, in a lawsuit against Menke and five other landlord/owners. The complaint alleged that the children had received lead poisoning due to their exposure to lead-based paint in various places where they had resided from 1990 through 1998 and set forth claims for negligence and for breach of a warranty of habitability.

{¶ 3} Raimond signed the complaint as the attorney of record. Menke was the titleholder of a building located at 3777 West Liberty Avenue. Socol was an employee of Colman Hanish Realty, and Colman Hanish Realty managed and rented apartments in the building.

{¶ 4} Approximately eight months after filing the complaint, the firm moved to withdraw from its representation of Riston and her children due to Riston's lack of cooperation. A month after the court granted the firm's motion, Menke

moved for summary judgment, which the court granted. Two weeks later, Menke moved for sanctions against Raimond and the firm. Following a hearing, the trial court awarded the sanctions that underlie this appeal.

## I. The Appeal

{¶ 5} Raimond and the firm raise seven assignments of error. In their first assignment, they assert that the trial court erred in imposing Civ.R. 11 sanctions against Raimond where there was no evidence of willfulness. In the second through fifth assignments, the firm asserts that the trial court erred by imposing sanctions under R.C. 2323.51 because (1) the claims were warranted under the law; (2) there were good grounds to support the allegations, (3) the trial court ignored a medical-monitoring claim, and (4) the trial court required it to have definitive evidence of actual notice at the time it filed the complaint. In its sixth assignment, the firm contends that the trial court erred in concluding that it had no grounds for bringing the lawsuit, reasoning that a directed verdict against Menke would have been appropriate. In its last assignment, the firm challenges the trial court's denial of its motion for findings of fact and conclusions of law.

## II. The Facts Raimond and the Firm Knew

{¶ 6} The only conduct Menke challenged as sanctionable was the filing of the complaint. The complaint alleged that Riston's children had resided at the West Liberty address from April 1997 through December 1997. Menke argued below that sanctions were appropriate because Raimond and the firm had not adequately investigated the facts before filing suit. His claim rested on the assertion that the dates of residency at the West Liberty apartment provided by Riston had no documentary support as to Aqui, Andrea, and Deaunna and were contradicted by documentary evidence as to Jerrin and Jasmine. He also asserted that the level of lead in Jerrin's and Jasmine's blood had dropped during the time that the documentary evidence demonstrated that Jerrin and Jasmine had lived at the West Liberty address. Menke also contended that at the time the complaint was filed, there was no evidence that Aqui, Andrea, and Deaunna had had blood tests for lead poisoning during the time that they had allegedly lived at the West Liberty address.

{¶ 7} Raimond and the firm presented evidence that they had relied on Riston's statement concerning the time the children had resided at the West Liberty Avenue address, after stressing to her the importance of the accuracy of the information; that the children had elevated lead levels in their blood; and that, in June 1997, the West Liberty apartment had been found to contain lead-based paint hazards in violation of Cincinnati Board of Health regulations. (In Socol's and Colman Hanish Realty's subsequent answers to interrogatories, they

stated that the Riston family had resided in the property "approximately from April to October 1997.") There was also evidence that dates in the Cincinnati Health Department records and clinic records contained inconsistencies about residency dates, and that the Cincinnati Health Department's Stellar database contained the date when the department was given notice that a child was living at an address, and not necessarily the first date the child lived at that address.

{¶ 8} Documents concerning the inspection of the West Liberty apartment indicated that when the inspection was done in June 1997, six people resided at "3777," and two of the children were younger than six years of age and had elevated lead levels in their blood. The lead levels and the ages of the children were identical to those of two of the Riston children. Raimond and the firm also asserted that they had been unsuccessful in obtaining Aqui's, Andrea's, and Deaunna's medical documents before filing the complaint. But they did provide the affidavit of Robert A. Cohen, D.O., in which he opined that the children's exposure to the lead-based paint at Menke's apartment "contributed substantially to the continued persistence and aggravation of the lead poisoning previously detected" in the children and would increase the harm to them.

### III. Civ.R. 11 Sanctions

 {¶ 9} Civ.R. 11 states, "Every pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name * * *." The attorney's signature constitutes certification by the attorney of the following: (1) that he or she has read the pleading, motion, or document; (2) that to the best of the attorney's knowledge, information, or belief, the pleading, motion, or document is supported by good grounds; and (3) that the pleading, motion, or document is not interposed for delay.[2] If the rule is willfully violated, or if a scandalous or indecent matter has been inserted, the attorney can be subject to sanctions, including attorney fees.[3] Any violation must be willful—negligence is insufficient to invoke Civ.R. 11 sanctions.[4] "Civ.R. 11 employs a subjective bad faith standard."[5] Thus, it was Raimond's actual intent or belief that was relevant to

---

2. Civ.R. 11.

3. Id.

4. See Ceol v. Zion Indus., Inc. (1992), 81 Ohio App.3d 286, 290, 610 N.E.2d 1076.

5. See Stone v. House of Day Funeral Serv., Inc. (2000), 140 Ohio App.3d 713, 721, 748 N.E.2d 1200.

the determination of willfulness. The trial court's decision to impose sanctions cannot be reversed absent an abuse of discretion.[6]

{¶ 10} Menke claimed below that Raimond did not have good grounds to support his claim to the best of his knowledge, information, and belief, because there were insufficient facts to bring the lawsuit against Menke at the time it was filed. The trial court agreed.

{¶ 11} Presumably this conclusion was based on the unresolved questions concerning whether and when the children lived at the West Liberty address and the failure to obtain lead levels for Aqui's, Andrea's, and Deaunna's blood during the time they allegedly resided there. We conclude that the evidence failed to demonstrate that Raimond willfully violated Civ.R. 11.

{¶ 12} Riston was interviewed and was told several times about the importance of having the correct dates of residency for the different places she and her children had resided. There was evidence that the West Liberty Avenue property had lead hazards present. The inspection report strongly suggested that the Riston children resided there at least as of June 16, 1997. Although the dates provided by Riston were inconsistent with the documentary evidence, an employee of the firm was familiar with the Cincinnati Health Department's Stellar database and the type of information it contained and knew the possibility of misinformation being entered in clinical records. There was nothing else to cause suspicion that Riston had not provided accurate information.

{¶ 13} The medical records of all the children except for the blood tests for three of them after they had moved into the West Liberty apartment were available. The lead levels in Jerrin's and Jasmine's blood had risen during the time Riston said that all of the children had lived on West Liberty. Knowledge gleaned from talking with experts and experience indicated that if a child were not being exposed to lead, the lead level in the blood would decrease to a greater degree than that indicated by the available blood tests. This demonstrated the possibility that the other three children were being exposed to lead at the West Liberty apartment.

{¶ 14} Although Riston may not have prevailed at trial or on a summary-judgment motion, and further discovery may have resulted in dismissal of the suit, at the time the complaint was filed, the subjective reasons for doing so were more than adequate. Thus, there was no willful violation of Civ.R. 11. We sustain the first assignment because we conclude that the trial court's conclusion was unreasonable and, thus, an abuse of discretion.

---

6. *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65, 29 OBR 446, 505 N.E.2d 966.

## IV. R.C. 2323.51 Sanctions

{¶ 15} The trial court also concluded that the firm had violated R.C. 2323.51(A)(2)(a)(ii) by asserting claims unwarranted under existing law and unsupported by a good-faith argument for an extension, modification, or reversal of existing law. The relevant version of R.C. 2323.51 is as it existed before the 1996 Ohio Tort Reform· Act, 146 Ohio Laws, Part II, 3867, 3974, which was subsequently declared unconstitutional in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward.*[7] (That version was recodified by 2001 S.B. No. 108, which revived the version in effect before the enactment of the Ohio Tort Reform Act.)

{¶ 16} In Menke's motion for sanctions under R.C. 2323.51, he again argued, based on the same evidence, that the failure to adequately investigate the facts prior. to filing the lawsuit constituted frivolous conduct.

{¶ 17} A motion for sanctions under R.C. 2323.51 requires a court to determine whether the challenged conduct constitutes frivolous conduct, as defined by the statute, and, if so, whether any party has been adversely affected by the frivolous conduct.[8] If any party has been adversely affected, the court must determine whether an award· of reasonable attorney fees .and expenses is warranted and, if so, the amount necessitated by the frivolous conduct. R.C. 2323.51 defines two types of frivolous conduct: (1) conduct that serves only to harass or maliciously injure the opposing party in a civil action and (2) conduct that is unwarranted under existing law and for which there is no "good faith argument for an extension, modification, or reversal of existing law."[9] It is only the legally groundless form of frivolous conduct that is in question in this appeal.

### A. Standards of Review

{¶ 18} Before turning to the issues in this case, we must clarify the proper standard of review. Ohio law is inconsistent concerning the appropriate standard of review. In *Wiltberger v. Davis,*[10] the Tenth Appellate District described the case law on the standard of review for frivolous-conduct determinations under R.C. 2323.51 as "disparate and often just plain muddled."[11] It explained:

---

7. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062.

8. R.C. 2323.51(B)(2)(c).

9. R.C. 2323.51(A)(2)(a)(i) and (ii).

10. *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 673 N.E.2d 628.

11. Id. at 50, 673 N.E.2d 628.

{¶ 19} "One analytical problem arises because courts have not drawn a distinction between the two types of sanctionable conduct—the 'harassing' conduct and the 'legally groundless' conduct. Obviously, the two types of conduct are not always mutually exclusive. When courts have expressly distinguished between the two provisions, divergent authority has resulted from varying determinations as to the applicable standard of review."[12]

{¶ 20} After its review of the case law, the Tenth Appellate District concluded that "no single standard of review applies in R.C. 2323.51 cases," and that "[t]he inquiry necessarily must be one of mixed questions of fact and law."[13] Accordingly, purely legal issues require no deference to the trial court's determination, while some deference must be given to the trial court's factual determinations.[14] The Tenth Appellate District determined that the trial court's factual findings would not be disturbed if they were supported in the record by competent, credible evidence.[15]

{¶ 21} We believe that the Tenth Appellate District came to the proper conclusion. If the facts underlying a claim for sanctions are undisputed, the analysis is purely legal and there is no issue of how to review the trial court's factual findings. But if the facts under a "legally groundless claim" are in dispute, a mixed question of law and facts exists.

{¶ 22} In the past, this court has used an abuse-of-discretion standard in reviewing a trial court's decision on frivolous conduct, regardless of the type at issue.[16] Today we conclude that while the abuse-of-discretion standard is appropriate when reviewing a trial court's determination of whether a party has engaged in conduct merely to harass or maliciously injure another,[17] an issue that necessarily involves factual considerations, it is improper for reviewing a trial court's determination whether a party has pursued a legally groundless claim.

---

12. Id.

13. Id. at 51, 673 N.E.2d 628.

14. Id.

15. Id. at 52, 673 N.E.2d 628.

16. See *Curtis v. Curtis* (2000), 140 Ohio App.3d 812, 749 N.E.2d 772; *Rosser v. Terminix Internatl. Co.* (2001), 143 Ohio App.3d 157, 757 N.E.2d 820; *Conese v. Nichols* (1998), 131 Ohio App.3d 308, 722 N.E.2d 541; *Kleve v. Wenstrup* (Mar. 6, 1996), Hamilton App. No. C–950422, 1996 WL 94850; *Koukios v. Marketing Dynamics, Inc.* (Sept. 7, 1994), Hamilton App. Nos. C–920913, C–920918, C–930289 and C–930555, 1994 WL 481769; *Riley v. Langer* (1994), 95 Ohio App.3d 151, 642 N.E.2d 1.

17. See *Ceol v. Zion Industries, Inc.*, supra; *Shaffer v. Mease* (1991), 66 Ohio App.3d 400, 584 N.E.2d 77; *Hildreth v. Mims* (1990), 70 Ohio App.3d 282, 590 N.E.2d 1353.

Because legally groundless frivolous conduct involves a question of law, we review it de novo.[18] Thus, to the extent that our prior cases have used the incorrect standard, we overrule them. But a trial court's decision whether to award attorney fees on the basis of frivolous conduct that has given rise to adverse consequences is still reviewed under the abuse-of-discretion standard.[19]

{¶ 23} In this case, it was alleged that because the firm inadequately investigated, it filed a complaint that was not warranted under existing law and that could not be supported by a good-faith argument for a reversal, modification, or extension of existing law. Therefore, the issue before the trial court was this: whether, based upon the state of the facts in the firm's possession at the time it filed the complaint, it was frivolous, as a matter of law, to file the complaint. At the time the firm filed the lawsuit, it had requested, but had not obtained, all the medical records for Aqui, Andrea, and Deaunna. The records it did have concerning those children indicated lead levels in the blood from a time earlier than the alleged residency of the children at the West Liberty address. There was no documentary evidence that those three children lived at the West Liberty address, but Riston told the firm that she and all her children had lived there during that time. There was also documentary evidence that was both internally inconsistent and inconsistent with the times given by Riston concerning the residency of Jerrin and Jasmine.

### B. A Legally Groundless Claim Does Not Mean A Claim Not Well Grounded in Fact

{¶ 24} We first address whether the failure to investigate a claim can constitute legally groundless conduct. Some Ohio courts have determined that a failure to adequately investigate a claim constitutes frivolous conduct under R.C. 2323.51.[20] But these cases applied a version of R.C. 2323.51 that had defined frivolous conduct as an allegation that had no evidentiary support or was not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. That version was repealed and the prior version

---

18. See *Ohio Civ. Rights Comm. v. Harlett* (1999), 132 Ohio App.3d 341, 347, 724 N.E.2d 1242; *Passmore v. Greene Cty. Bd. of Elections* (1991), 74 Ohio App.3d 707, 712, 600 N.E.2d 309; *Toth v. Toth* (1994), 94 Ohio App.3d 561, 565, 641 N.E.2d 254.

19. See *Ron Scheiderer & Assoc. v. London* (1998), 81 Ohio St.3d 94, 97, 689 N.E.2d 552 (the legislature gave courts discretion "to hold those engaging in frivolous conduct responsible for their actions").

20. See *Stone v. House of Day Funeral Serv., Inc.*, supra, fn. 5; *Haney v. Trout* (Feb. 12, 2002), Franklin App. Nos. 00AP–1448 and 00AP–1457, 2002 WL 205997.

revived after the Ohio Supreme Court determined that the Ohio Tort Reform Act was unconstitutional.[21]

{¶ 25} The Ohio Supreme Court, when construing the version of R.C. 2323.51 in effect in 1995, which contained a definition of "frivolous conduct" that was substantially similar to the current version, stated in dicta that "[w]hen a trial court has determined that reasonable inquiry by a party's counsel of record should reveal the inadequacy of a claim, a finding that the counsel of record has engaged in frivolous conduct is justified, as is an award, made within the statutory guidelines, to any party adversely affected by the frivolous conduct."[22] The underlying case involved findings that the plaintiffs had filed a claim merely to harass and maliciously injure the defendants, and that the failure to present evidence during discovery, trial, or the sanctions hearing to support an element of their claim proved it to be legally groundless.[23]

{¶ 26} At least two courts have defined a frivolous claim as "a claim that is not supported by facts in which the complainant has a good-faith belief, and which is not grounded in any legitimate theory of law or argument for future modification of the law,"[24] a definition that seems to encompass a failure to investigate.

{¶ 27} In contrast, the Seventh and Second Appellate Districts have determined that the language of R.C. 2323.51 "does not define frivolous conduct so as to include the assertion of a claim or defense which is not well grounded in fact" and have refused to read such language into the statute.[25] We agree.

{¶ 28} The law concerning R.C. 2323.51 has adequately been set out by the Second Appellate District in *Hickman v. Murray*[26]:

{¶ 29} "The statute is to be applied carefully so that legitimate claims are not chilled. * * * A party is not frivolous merely because a claim is not well-grounded. * * * Furthermore, the statute was not intended to punish mere

---

21. See S.B. No. 108, effective July 6, 2001.

22. *Ron Scheiderer & Assoc. v. London*, supra, 81 Ohio St.3d at 97–98, 689 N.E.2d 552.

23. See *Ron Scheiderer & Assoc. v. London* (Aug. 5, 1996), Madison App. Nos. CA95–08–022 and CA95–08–024, 1996 WL 435312, affirmed (1998), 81 Ohio St.3d 94, 689 N.E.2d 552.

24. *Jones v. Billingham* (1995), 105 Ohio App.3d 8, 12, 663 N.E.2d 657; *Burrell v. Kassicieh* (1998), 128 Ohio App.3d 226, 230, 714 N.E.2d 442, citing *Jones v. Billingham*, supra.

25. *Richmond Glass & Aluminum Corp. v. Wynn* (Sept. 5, 1991), Columbiana App. No. 90–C–46, 1991 WL 172902; *Hickman v. Murray* (Mar. 22, 1996), Montgomery App. No. CA 15030, 1996 WL 125916.

26. Id.

misjudgment or tactical error. \* \* \* Instead the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action. \* \* \*

{¶ 30} "Whether a claim is warranted under existing law is an objective consideration. \* \* \* The test, we find, is whether no reasonable lawyer would have brought the action in light of the existing law. In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim." [27]

### C. Frivolous Conduct under the Legally Groundless Prong Means No Reasonable Lawyer Would Assert the Claim

{¶ 31} Thus, we are not determining whether the complaint in this case was well grounded in fact. We are determining whether it was absolutely clear that no reasonable attorney would have alleged that Menke was negligent for injuries to the Riston children or had breached the warranty of habitability based on a client's representation of residency and the evidence the firm possessed. It is not frivolous conduct for an attorney to reasonably rely on the representations of his or her client.[28] This makes sense, "[c]onsidering that the frivolous conduct statute was patterned after the Disciplinary Rules, [and that] it would appear that the General Assembly intended to sanction egregious conduct, not mere misjudgment or tactical error." [29] Reliance on a client's representations after the client is warned about the need for accuracy and the client reviews the complaint to verify its accuracy, even where there is contradictory documentary evidence available, is not necessarily unreasonable.

{¶ 32} The firm's reliance on its client's information that her children had lived at the West Liberty Avenue apartment at particular times was reasonable under the surrounding circumstances, despite the fact that documentary evidence was either unavailable or inconsistent. Whether the firm could prove the time of residency following discovery, in a summary-judgment motion, or at trial is another issue. In fact, the answers to interrogatories provided by Socol and Colman Hanish Realty indicated that the children had resided at the West Liberty address from approximately April through October 1997. Thus, while an issue of credibility may have been triggered in future proceedings, the evidence was not such that no reasonable lawyer could have argued the claims against Menke based on the conflicting dates of residency.

---

27. (Citations omitted.) Id.

28. Accord Stone v. House of Day Funeral Serv., Inc., supra; Driskill v. Babai (Mar. 26, 1997), Summit App. No. 17914, 1997 WL 148611; Tomb & Assoc., Inc. v. Wagner (1992), 82 Ohio App.3d 363, 612 N.E.2d 468.

29. Stephens v. Crestview Cadillac, Inc. (1989), 64 Ohio App.3d 129, 580 N.E.2d 842.

{¶ 33} Menke also argued below that there were insufficient facts known to the firm to file a claim on behalf of Andrea, Aqui, and Deaunna, because their blood levels had not been tested while they had allegedly lived at the West Liberty address. To the extent that Menke's argument was that the claim was not well grounded, that did not constitute a legally groundless action. The evidence that the firm had was that three of five children residing at the same lead-contaminated apartment had increased levels of lead in their blood during the time Riston said that all five children had resided there. We recognize that, without evidence of proximate cause, the firm would not have been able to prove the claim. But filing the claim without definitive proof of proximate cause, where evidence might later have been garnered, was not sanctionable conduct. We cannot say that it was absolutely clear that under existing law no reasonable attorney could have pursued the claim.

{¶ 34} The firm also argued that it had a good-faith argument for a medical-monitoring claim. It presented evidence that the children were exposed to an increased risk of harm by living in a lead-contaminated environment, that such an increase could have resulted in damages for medical monitoring, and that the lead levels in the blood would not have decreased as quickly if a child continued to be exposed to lead.

{¶ 35} To the extent that the complaint could be construed to assert such a claim, and upon the proof of proximate cause, a medical-monitoring claim was not legally groundless. At least one Ohio common pleas court has acknowledged the claim.[30] And federal cases have recognized medical-monitoring claims.[31] We conclude that a good-faith interpretation of federal case law in support of a change in Ohio law that has not been specifically addressed by an Ohio reviewing court does not warrant sanctions.

{¶ 36} The firm also argued that the trial court erred by requiring that Menke have actual notice of the presence of lead, as opposed to constructive notice. While we do not agree that the trial court specifically made that finding, we conclude that it was not sanctionable for the firm to draft the complaint in the alternative as to notice. Because of a split in the decisions concerning the type of notice required,[32] we cannot say that the claim was absolutely unwarranted.

30. *Wilson v. Brush Wellman, Inc.* (Feb. 12, 2002), Ottawa C.P. No. 401890, 2002 WL 356298.

31. See *In re Marine Asbestos Cases* (C.A.9, 2001), 265 F.3d 861; *In re Telectronics Pacing Systems, Inc.* (S.D.Ohio 1996), 168 F.R.D. 203; *O'Neal v. Dept. of the Army of the United States of Am.* (M.D.Pa.1994), 852 F.Supp. 327; *Day v. NLO* (S.D.Ohio 1994), 851 F.Supp. 869.

32. Accord *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 727 N.E.2d 1277, syllabus (landlord is excused from liability where he neither knew nor should have known of the factual circumstances that caused violation of R.C. 5321.04[A][1] or 5321.04[A][2] ). See *DeVore v. Franklin*

### D. Striking A Balance

{¶ 37} We emphasize that whether the firm could prove the claims differs from whether the claims were warranted under existing law or whether a good-faith argument for extension, modification, or reversal of existing law existed. It filed the complaint before any discovery was conducted. Subsequent discovery would have allowed it to develop the facts more fully. At the time the firm filed the complaint, there was a colorable basis for doing so, although that basis may have disappeared upon further discovery. We agree with the following sentiment expressed by the Seventh Appellate District:

{¶ 38} "[I]t is difficult for the trial court to strike a delicate balance between protecting the adversary and not allowing attorneys to exploit the system for their own purpose. However, we must not be unmindful that in some close cases applying R.C. 2323.51 would have a chilling effect on legitimate advocacy by discouraging aggressive representation by the attorney for the client. Unless there is a clear-cut violation of the statute, a potential dilemma confronts a lawyer in satisfying his obligation of professional responsibility which requires zealous representation on one hand and satisfying his obligation under R.C. 2323.51 on the other hand. These are legitimate concerns." [33]

{¶ 39} A similar consideration is that "our legal system is in large part based on the considered evolution of law, and we rely today upon legal rights that would not have evolved in a climate that did not encourage responsible, creative, arguments for the extension of law. Therefore, we do not intend to discourage attorneys from making innovative arguments." [34] We conclude that the conduct of the firm in filing the complaint was not legally groundless. Thus, the trial court erred in concluding that the firm had engaged in frivolous conduct.

### V. Conclusion

{¶ 40} Our conclusion that there was no frivolous conduct subsumes the sixth and seventh assignments of error. Accordingly, we reverse the trial court's judgment awarding sanctions under Civ.R. 11 and R.C. 2323.51.

Judgment reversed.

HILDEBRANDT and SUNDERMANN, JJ., concur.

---

Manor Apts. (Apr. 22, 1999), Franklin App. No. 98AP–779, 1999 WL 236040; *Bell v. Goldsmith* (July 6, 1995), Cuyahoga App. No. 67893, 1995 WL 396352; *Straughter v. Stark Metro. Hous. Auth.* (June 1, 1992), Stark App. No. CA–8696, 1992 WL 127098. But, see, *Winston Properties v. Sanders* (1989), 57 Ohio App.3d 28, 565 N.E.2d 1280.

33. *Richmond Glass & Aluminum Corp. v. Wynn*, supra.

34. *Passmore v. Greene Cty. Bd. of Elections*, 74 Ohio App.3d at 713–714, 600 N.E.2d 309.