[Cite as *Bachman v. Durrani*, 2021-Ohio-4073.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| GAYLE BACHMAN, et al., | : | APPEAL NO. C-190514 |
|  |  | TRIAL NO. A-1601237 |
| Plaintiffs, | : |  |
|  |  |  |
| vs. | : | *O P I N I O N.* |
|  |  |  |
| ABUBAKAR ATIQ DURRANI, M.D., et al., | : |  |
|  | : |  |
| Defendants, | : |  |
|  |  |  |
| and | : |  |
|  |  |  |
| THE CHRIST HOSPITAL, | : |  |
|  |  |  |
| Defendant-Appellee, | : |  |
|  |  |  |
| vs. | : |  |
|  |  |  |
| THE DETERS LAW FIRM, | : |  |
|  |  |  |
| FRED JOHNSON, ESQ., | : |  |
|  |  |  |
| and | : |  |
|  |  |  |
| BENJAMIN MARAAN II, ESQ., | : |  |
|  |  |  |
| Appellants. | : |  |
|  | : |  |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 17, 2021

*The Deters Law Firm Co. II, P.A., James F. Maus, Alex Petraglia* and *Robert A. Winter, Jr.,* for Appellants,

*Dinsmore & Shohl LLP, Jennifer Orr Mitchell, Matthew S. Arend* and *R. Samuel Gilley,* for Defendant-Appellee.

**BERGERON, Presiding Judge.**

{¶1} We don't let a party file multiple suits against the same defendant in the same court for the same injury at the same time. And just reciting that proposition answers the question of why. Nevertheless, in this latest scene from a medical malpractice epic, counsel for Gayle Bachman violated that basic rule, filing a consolidated action against defendant-appellee The Christ Hospital ("TCH") joining the claims of multiple plaintiffs who already had cases pending against TCH for the same claims (worse yet, some of these claims had already been dismissed in favor of TCH). Upon learning of the duplicative action, TCH alerted the lawyers to this procedural snafu and requested that they dismiss the second, duplicative action. These entreaties fell on deaf ears, as counsel forced TCH to wage a two-front battle over several years—defending the individual actions as well as the duplicative consolidated action. After never receiving a satisfactory answer as to why counsel compelled these wasteful efforts, the trial court levied sanctions against them. On appeal, after delving into the record of this procedural adventure, we have no hesitation in affirming its judgment.

I.

{¶2} The trial court sanctioned appellants The Deters Law Firm, Fred Johnson, Esq., and Benjamin Maraan II, Esq., (collectively, "Counsel"). The first chapter of this odyssey began in 2014 when Counsel joined 36 former patients of Dr. Abubakar Atiq Durrani in an action against Cincinnati Children's Hospital Medical Center ("CCHMC"), captioned *Bachman v. Durrani*. In drafting the complaint, however, Counsel included nine plaintiffs with pending lawsuits involving the same claim against CCHMC, in the same forum. Making matters worse, the court had

3

already dismissed with prejudice the identical claims of two of the plaintiffs, Carla Greissman and Kevin Hunley. Shortly after receiving the complaint, CCHMC's attorney alerted Counsel to the pleading deficiencies and the frivolity of the complaint. Counsel conceded that one plaintiff—Andrew Carr—should be dismissed from the lawsuit as duplicative. But other than that one acknowledgment, Counsel refused to take any action in response to CCHMC's inquiry and instead rebuked CCHMC for having the temerity to broach the subject.

{¶3} Sensing no forthcoming voluntary agreement on this issue, CCHMC moved to dismiss the "legally frivolous lawsuit." The motion chronicled efforts by Counsel to file inappropriate pleadings and stall the progress of numerous cases with this type of conduct, all of which multiplied the cost of litigation. Instead of defending the propriety of the litigation, Counsel voluntarily dismissed the suit in 2015—the exact action CCHMC wanted in the first place.

{¶4} The next chapter in our journey began about a year later, in 2016. Despite CCHMC's previous warnings, Counsel refiled the exact same joint complaint with the exact same 36 plaintiffs. Counsel made one change of note—adding TCH as a defendant in addition to CCHMC. By this point in time, TCH had been embroiled in *Durrani*-related litigation in a multitude of suits brought by Counsel for quite some time. Imagine TCH's surprise when it reviewed this consolidated action to discover that 28 of the plaintiffs had pending individual lawsuits against TCH alleging the same cause of action, three others had their cases previously dismissed with prejudice, and the remaining five had previously dismissed actions without timely refiling. TCH accordingly advised Counsel of the frivolousness of the filing, requesting dismissal of the joint lawsuit in order to avoid unnecessary motion

practice. The next day, CCHMC chimed in, reiterating its concerns from the original filing the previous year. Counsel was unmoved—they refused to dismiss the action despite the failure to explain how the matter could be independently maintained.

{¶5} In the ensuing 16 months, various opposing counsel notified Counsel on at least three separate occasions that the complaint was frivolous and duplicative. Yet Counsel refused to budge, forcing TCH and CCHMC to move forward and defend against the *Bachman* action while they simultaneously defended the myriad individual suits. During this process, the trial court dismissed on the merits many additional individual cases against TCH. As case after case was dismissed, one might have suspected that this would have caused Counsel to reevaluate their position on the second, duplicative action. Not so.

{¶6} TCH accordingly filed a motion to dismiss and CCHMC filed for judgment on the pleadings, both of which raised the specter of sanctions against Counsel for refusing to voluntarily dismiss. The trial court, also seemingly perplexed about why it was being forced to referee duplicative claims, emailed Counsel for an explanation of "how Plaintiffs expect to proceed on these separate actions that are joined in this one complaint." The court advised Counsel that all of these plaintiffs had identical cases pending (or already dismissed), marking yet another occasion in which this flaw was raised to Counsel's attention. In response, Counsel acknowledged that even though "it's the same claim as their main cases," they did not want to dismiss and preferred to have the cases consolidated. Three days later, Counsel did indeed file a single-sentence motion to consolidate followed by a motion to amend the complaint to add a RICO claim. The trial court swiftly denied those motions while granting TCH's motion to dismiss and CCHMC's motion for judgment

5

on the pleadings. Counsel never bothered to file a response to TCH's motion to dismiss.

{¶7} Shortly after, in December of 2018, TCH and CCHMC moved for sanctions against Counsel. CCHMC subsequently entered settlement negotiations and apparently resolved the matters pending against it, so it exited the stage in *Bachman*. The trial court ultimately awarded TCH sanctions in the amount of $54,630 for frivolous conduct under R.C. 2323.51 and Ohio Rule of Civil Procedure 11. Undeterred by this ruling, Counsel continued to appeal the trial court's denial of the motion to consolidate (although they paradoxically failed to appeal the dismissal). At oral arguments in front of this court, Counsel informed us that all of the individual actions against TCH had already been decided on the merits and conceded that the matter was moot. Thus, we dismissed the appeal as moot—almost five years after TCH first asked Counsel to dismiss the action precisely because the individual suits rendered the joint complaint duplicative.

II.

{¶8} In their first assignment of error, Counsel insists the trial court abused its discretion by granting TCH's motion for sanctions because the court should have consolidated the cases. But before we dive into this analysis, we must clarify that the trial court imposed sanctions under both R.C. 2323.51 and Civ.R. 11, but in this appeal, Counsel limit their challenge to R.C. 2323.51, essentially disregarding the Civ.R. 11 aspect of that determination. Why does this matter? A law firm is generally not responsible for an award of fees under Civ.R. 11, which is limited to the attorneys signing the offending documents. Civ.R. 11 ("The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party

has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."); *Riley v. Langer,* 95 Ohio App.3d 151, 162-163, 642 N.E.2d 1 (1st Dist.1994) (comparing former analogous section to Federal Rule of Civil Procedure 11 in finding that liability under Civ.R. 11 can be imposed on a signing attorney only in his or her individual capacity, not on the attorney's firm). But firms, as well as individual lawyers, can be liable for such fees under R.C. 2323.51.

{¶9} Although the trial court found that Matthew Hammer violated Civ.R. 11 by initially filing the offensive pleadings and motions, Mr. Hammer never appealed. Therefore, we do not consider any issues in this appeal concerning his conduct. Similarly, the court found that Mr. Johnson and Mr. Maraan ratified and continued the wrongful litigation in subsequently-filed documents, but despite appealing, neither of these individuals contests the Civ.R. 11 sanction against them (it turns out that Mr. Johnson is deceased now). As a result, we affirm the trial court's Civ.R. 11 decision against the individual attorneys for failure to advance any specific argument or assignment of error on that issue. *See* App.R. 16(A). We limit the balance of our analysis to the frivolous conduct determination.

A.

{¶10} Under R.C. 2323.51(A)(2)(a)(ii), conduct is frivolous and unwarranted if no reasonable attorney would have brought the action in light of existing law. *Riston v. Butler,* 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, ¶ 31 (1st Dist.). If a court "determine[s] that reasonable inquiry by a party's counsel of record should reveal the inadequacy of a claim, a finding that the counsel of record has engaged in frivolous conduct is justified, as is an award * * * to any party adversely

7

affected by the frivolous conduct." *Ron Scheiderer & Assocs. v. London*, 81 Ohio St.3d 94, 97-98, 689 N.E.2d 552 (1998). As relevant here, conduct is frivolous when it: (1) "serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation," or (2) "[i]t is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(i) and (ii). A motion for sanctions requires the trial court to consider whether any party has been adversely affected by the frivolous conduct of another party. *Riston* at ¶ 17. Because the issue of whether the complaint was unwarranted and legally groundless pursuant to R.C. 2323.51(A)(2)(a)(ii) involves a question of law, we review that portion de novo. *Id.* at ¶ 21.

{¶11} In their brief, Counsel frames the issue at hand as whether filing for consolidation was sanctionable conduct under R.C. 2323.51. Counsel believes that granting the motion to consolidate would have alleviated any concerns about duplicative litigation, and thus they imagine vindication on consolidation as their ticket out of sanctions. But this argument rests on a misapprehension of the basis of the trial court's sanctions award. The trial court sanctioned Counsel for willfully resisting dismissal of the duplicative suit long after being made aware of the problem, not for filing the motion to consolidate. Therefore, even if the consolidation motion were meritorious, it would not absolve Counsel of their sanctionable conduct.

8

{¶12} Hampered by that misplaced perspective, Counsel effectively miss the forest for the trees in this appeal, as they never muster a substantive defense as to why they filed multiple lawsuits against the same parties for the same harm. Ohio law "abhors a multiplicity of suits," a long-standing tenet prohibiting Counsel from harassing TCH with multiple actions for the same claims. *See State ex rel. Maxwell v. Schneider,* 103 Ohio St. 492, 496, 134 N.E. 443 (1921) ("[T]he law * * * will not permit a defendant to be harassed and oppressed by two actions for the same cause where plaintiff has a complete remedy by one of them."); *State ex rel. Miller v. Court of Common Pleas,* 151 Ohio St. 397, 400, 86 N.E.2d 464 (1949) ("It is well settled that the pendency of an action for the identical cause and between the same parties as in a subsequent action is ground for the dismissal of the latter."). And undoubtedly, frivolous conduct under Ohio law encompasses Counsel's conduct at issue here—bringing the same claims against the same parties after having been previously unsuccessful. *See State ex rel. Striker v. Cline,* 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 17 ("A court does not abuse its discretion in determining that a party's conduct in repeatedly relitigating an issue after first raising it unsuccessfully constituted frivolous conduct under R.C. 2323.51.").

{¶13} The closest Counsel comes to mounting a substantive defense is to point to *State ex rel. Consortium for Economic & Community. Dev. for Hough Ward 7 v. Russo,* 151 Ohio St.3d 129, 2017-Ohio-8133, 86 N.E.3d 327. There, the Ohio Supreme Court considered the jurisdiction priority rule when two cases are pending in the same court before different judges. *Id.* at ¶ 6. But the two lawsuits involved different claims (quiet title in one, tax foreclosure in another), different parties (the contesting owners in one, taxing agency versus property and others in the second),

and ended up on the desk of two different judges. *Id.* at ¶ 4. The Supreme Court recognized that in such a situation, consolidation before the same judge constitutes a proper procedural path, but this is little more than a garden-variety situation that could benefit from consolidation. *See id.* at ¶ 10. That situation bears little resemblance to this case, where Counsel copied and pasted identical causes of actions involving identical parties for the same harm into a consolidated complaint that duplicated the already-pending actions.

{¶14} Furthermore, Counsel's shifting explanations for why they could not dismiss the joint complaint resulted in the trial court's assessment that their efforts were designed to harass and inflict needless fees on TCH pursuant to R.C. 2323.51(A)(2)(a)(i). Because this portion of the analysis involves factual determinations, we accord the trial court deference and review these findings for an abuse of discretion. *Riston,* 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, at ¶ 22 ("[T]he abuse-of-discretion standard is appropriate when reviewing a trial court's determination of whether a party has engaged in conduct merely to harass or maliciously injure another, an issue that necessarily involves factual considerations"). Abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, Slip Opinion No. 2021-Ohio-3304, ¶ 35. We would be hard-pressed to conclude the trial court abused its discretion after Counsel vacillated between various justifications for the consolidated action—all of which crumbled under scrutiny.

{¶15} First, Counsel assured the trial court that they needed to file the consolidated action quickly to avoid any statute of repose or limitations bar. But this

makes no sense given that Counsel had already filed individual cases against TCH for all of the plaintiffs (and it had previously filed the same action against CCHMC but dismissed it). In other words, no clock was ticking that needed to be stopped. Counsel also complained that dismissing the complaint for the second time would violate Civ.R. 41's double-dismissal rule, resulting in a judgment on the merits. But this strikes us as a problem of Counsel's own creation, albeit one that they could have extricated themselves from by requesting an order to dismiss without prejudice from the trial court or a stipulation in similar vein from TCH. Regardless, even if those concerns were legitimate, Counsel cannot defend (nor do they attempt to) the prosecution of the *Bachman* case with respect to individuals whose cases were resolved on the merits in favor of TCH. In their reply brief before this court, Counsel concedes that at least 15 individuals of those named in the consolidated complaint had their individual cases dismissed, and confesses "erring" in this regard by pursuing the duplicative litigation against TCH.

{¶16} This means that the consolidation idea, ill-fated from the start, could never have been effectuated based on the dismissals of the individual actions. After all, a court cannot join two things unless they both exist. Proper consolidation requires the court to first consider whether two pending actions present common issues, an impossible task when one of the claims has been dismissed. *See Waterman v. Kitrick*, 60 Ohio App.3d 7, 14, 572 N.E.2d 250 (10th Dist.1990); *see also Parkstone Capital Partners v. City of Salon,* 8th Dist. Cuyahoga No. 99241, 2013-Ohio-3149, ¶ 17 (holding that in cases of voluntary dismissal, the second case no longer exists and any motion to consolidate is rendered moot). This further reinforces the impropriety of the consolidation appeal in this case, which subjected

TCH to needless expense and delay, only to have Counsel admit that the matter was moot when we gathered for oral argument.

{¶17} Even if we could excuse the initial filing of this duplicative action, no reasonable attorney would have declined to dismiss this case when confronted with the facts and record at hand. Counsel had multiple opportunities to do the right thing (and were reminded of that option on several occasions), but instead they perpetuated this matter as long as possible, inflicting as much damage as they could on TCH and the judicial system. We accordingly overrule Counsel's first assignment of error.

### B.

{¶18} In their second assignment of error, Counsel contest the amount of the sanctions award, focusing on two line-items: (1) fees incurred by TCH during appeal (about $9,585), and (2) fees incurred by TCH in connection with an unsuccessful removal to federal court (about $6,323). We review the amount of sanctions under an abuse of discretion standard. *Pitcher v. Waldman,* 1st Dist. Hamilton No. C-160245, 2016-Ohio-5491, ¶ 16.

{¶19} Regarding fees incurred during appeal, Counsel incorrectly declares that only the appellate court may award such fees. To be sure, appellate courts enjoy the power to award fees and costs under the Ohio Rules of Appellate Procedure. App.R. 23 ("If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."). But this is not the exclusive path to fees, notwithstanding Counsel's reliance on *Tessler v. Ayer,* 108 Ohio App.3d 47, 669 N.E.2d 891 (1st Dist.1995), ostensibly for the notion that only appellate courts can impose sanctions for

appellate proceedings. We see two things wrong with this premise. First, we never held in *Tessler* that appellate sanctions fall within the exclusive purview of appellate courts; to the contrary, we simply imposed sanctions pursuant to App.R. 23. *Tessler* at 57. Second, after we decided *Tessler,* the General Assembly amended R.C. 2323.51 in 1996 to now expressly allow for "reasonable expenses incurred in connection with the civil action *or appeal.*" (Emphasis added.) R.C. 2323.51(B)(1). By statute, the trial court possessed discretionary authority to award sanctions for fees incurred in the appeal of this frivolous action. We see nothing to cast doubt on the court's exercise of discretion on this record.

{¶20} Finally, Counsel claims that TCH should not recover fees expended in an unsuccessful attempt to remove the case to federal court. Because the federal court remanded the matter, Counsel concludes that such a determination bars any fee recovery in connection with removal. But this places too narrow a limit on the scope of the frivolous conduct statute. The 1996 amendment to R.C. 2323.51 broadened the permissible fees from only those "necessitated by the frivolous conduct" to now include all "reasonable expenses incurred in connection with the civil action or appeal." R.C. 2323.51(B)(1); *Helfrich v. Madison,* 5th Dist. Licking No. 2011-CA-89, 2012-Ohio-3701, ¶ 49 (" 'The amendment to the statute clearly removed the requirement that fees be necessitated by the frivolous conduct, and replaced it with language allowing a party to recover attorney's fees 'reasonably incurred' by a party in a civil action.' "), quoting *Mid-Ohio Mechanical v. Eisenmann Corp.,* 5th Dist. Guernsey Nos. 07 CA 000035 and 08 CA 00012, 2009-Ohio-5804, ¶ 157. The statute does not limit awarded fees to successful filings and Counsel provided no authority to the contrary. *Mid-Ohio Mechanical* at ¶ 158 ("R.C. 2323.51 [does] not

13

limit the award of fees to those incurred as a result of appellant's filings only, but allow[s] an award of fees 'incurred in connection with the civil action.' "), quoting *Neubauer v. Ohio Remcon, Inc.,* 10th Dist. Franklin No. 05AP-946, 2006-Ohio-1481, ¶ 50. The relevant question on this issue is whether the removal to federal court represented a reasonable expense incurred in defending the civil action, not whether TCH ultimately prevailed on the issue. Here, parallel *Durrani* litigation proceedings confirm the removal related to the underlying frivolous civil action.

{¶21} TCH and CCHMC removed *Bachman* in April of 2016. At that time, and at the request of Counsel, all of the cases involving Dr. Durrani were in the process of being assigned to a particular judge, who anticipated convening a "massive group trial" with a multitude of plaintiffs (far exceeding 100) that would last six months to a year. As a result, the *Bachman* filing potentially created a mass action as defined in 28 U.S.C. 1332(d)(11). That a federal judge disagreed with that maneuver does not end our analysis.

{¶22} Much to the contrary, as explained above, TCH gave Counsel multiple opportunities to dismiss this suit. When Counsel demurred, TCH was entitled to defend the case as appropriate. Second-guessing TCH's litigation strategy after the fact only penalizes it. Even when a matter is frivolous, it often consumes a fair amount of resources to obtain judgment in one's favor, particularly if the lawyers involved resort to measures that drag the case out well beyond its shelf life. Based on the totality of this record, including the opportunities for Counsel to avoid all of the fees involved and the lack of any legitimate justifications for their actions, we find that the trial court acted within its discretion in holding that the removal fees were

reasonably incurred in defense of this action. We accordingly overrule Counsel's second assignment of error.

*          *          *

{¶23} In light of the foregoing analysis, we overrule both assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion