DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Wood County Court of Common Pleas. A brief summary of the lengthy history of this case is as follows.
 {¶ 2} On February 22, 1996, appellees, George and Betty Black, filed a complaint against appellants, David and JoAnne Pheils, for monetary damages based upon the tort claims of abuse of process and malicious prosecution. The claims stemmed from the 1994 case instituted by appellants for nuisance and trespass; the case was decided in appellees' favor and was affirmed by this court. See Pheils v. Black (Oct. 13, 1995), 6th Dist. No. WD-95-028.[1]
 {¶ 3} In appellees' complaint, they alleged that appellants, through appellant, David Pheils, an attorney, instituted the above action without probable cause and for a malicious purpose. Appellees further claimed that assuming that the action was instituted with probable cause, that cause was perverted to accomplish an improper purpose. Appellants, pro se, filed a counterclaim alleging that Betty Black, the named owner of an adjacent parcel of property, caused water to be diverted onto appellants' property causing damage.
 {¶ 4} On October 15, 1997, the trial court granted summary judgment in favor of appellees on appellants' counterclaim. The court found that the counterclaim was the subject of appellants' 1994 complaint and, thus, was barred by the doctrine of res judicata. Summary judgment was granted to appellants on appellees' malicious prosecution claim; appellees did not dispute that the claim lacked merit under Ohio law.
 {¶ 5} On April 23, 1998, appellants were awarded summary judgment as to appellees' remaining abuse of process claim. On appeal, this court affirmed the trial court's award of summary judgment as to appellants' counterclaim and appellees' malicious prosecution claim. We found, however, that genuine issues of material fact precluded summary judgment as to appellees' abuse of process claim and remanded the matter. See Black v. Pheils
(Dec. 4, 1998), 6th Dist. No. WD-98-029.
 {¶ 6} On September 24, 1999, appellant JoAnne Pheils' newly retained attorney filed an entry of appearance. Appellant, David Pheils, continued to represent himself. On September 6, 2000, the parties stipulated that the case would be tried before the court on November 13, 2000.
 {¶ 7} At the October 19, 2000 pretrial, settlement negotiations were held between the judge, David Pheils, and appellees' then-attorney, Jodie Stearns. A $25,000 offer was extended by Mr. Pheils to remain open for 24 hours. Later that evening, an acceptance letter was faxed to Mr. Pheils. On October 20, via facsimile, Mr. Pheils indicated that the settlement was acceptable to him and his wife. It is undisputed that neither JoAnne Pheils nor her attorney were present at the October 19 pretrial, or directly involved in the subsequent negotiations.
 {¶ 8} On November 3, 2000, appellees filed a motion to enforce the settlement agreement due to appellants' refusal to execute the mutual releases absent the inclusion of confidentiality and indemnity provisions. Shortly thereafter, a new trial judge was appointed and appellants renewed their request for a jury trial as to the enforceability of the agreement. On October 4, 2001, appellees' attorney filed a suggestion of death of appellee Betty Black and a request that the executor of her estate, George Black, be substituted as a party.
 {¶ 9} On October 16, 2001, the matter proceeded to a hearing on the following issues: (1) the enforceability of the settlement agreement; (2) whether appellants were entitled to a jury trial; (3) whether Betty Black's claim survived her death; (4) appellants' objections to the successor judge; and (5) Betty Black's failure to attend her deposition scheduled prior to her death. Appellees also requested attorney fees and expenses.
 {¶ 10} In its February 25, 2002 judgment, the trial court found that the parties had reached an enforceable settlement agreement and granted appellees' request for attorney fees and expenses. The court granted appellees' motion for substitution of party and denied appellants' motions to dismiss Betty Black's claim and for sanctions.
 {¶ 11} Appellants' appeal to this court was subsequently dismissed upon appellees' motion because the trial court, in awarding attorney fees, failed to determine the amount of the fees. On May 9, 2003, the trial court issued detailed findings of fact and conclusions of law, including a specific sum of attorney fees. Appellants again filed a notice of appeal.
 {¶ 12} On August 6, 2003, this court granted appellees' motion for a temporary remand and stay of proceedings to allow the trial court to rule on appellees' motion for partial relief from judgment under Civ.R. 60(B)(5). Appellees sought relief from the trial court's failure, in addition to finding frivolous conduct under R.C. 2323.51(A)(1)(b)(2)(a)(ii), to make a finding that appellants' conduct was frivolous, as defined in R.C.2323.51(A)(1)(b)(2)(a)(i), as it served merely to harass or injure appellees.
 {¶ 13} Following the September 2, 2003 hearing on the matter and memoranda filed by the parties, the trial court granted appellees' Civ.R. 60(B)(5) motion and found that appellants' refusal to perform the settlement agreement unless the confidentiality and indemnification provisions were added served merely to harass or maliciously injure appellees. The court reaffirmed its May 9, 2003 judgment in all other respects. Appellants then filed an amended notice of appeal.
 {¶ 14} Appellants now raise the following six assignments of error:
 {¶ 15} "I. Judge Yarbrough erred to defendants' prejudice in acting as the fact finder.
 {¶ 16} "II. Judge Yarbrough erred in finding that her co-defendant husband had authority to agree to the settlement on Mrs. Pheils' behalf by either implication or estoppel and denying Mrs. Pheils' motion for summary judgment.
 {¶ 17} "III. Judge Yarbrough erred in refusing to dismiss Mrs. Black's claim and then granting a judgment for the estate of decedent Mrs. Black.
 {¶ 18} "IV. Judge Yarbrough erred in finding that an enforceable settlement agreement was reached among both plaintiffs and defendants.
 {¶ 19} "V. Judge Yarbrough erred in awarding plaintiffs' attorney fees against defendants for merely defending plaintiffs' breach of contract claims when there was no evidence supporting such fees under O.R.C. § 2323.51.
 {¶ 20} "VI. Judge Yarbrough erred in using a 60(B)(5) hearing as a retrial on issues already tried and without notice in direct contravention of this court's mandate on temporary remand"
 {¶ 21} In their first assignment of error, appellants contend that because a settlement agreement is a type of contract, the dispute over the enforceability of the agreement was a proper subject for a jury. Appellants next argue that the jury waiver they signed was limited to the underlying abuse of process claim and to a trial before the former trial judge. Finally, appellants argue that because the trial court participated in settlement discussions, it was improper for the judge to act as the factfinder.
 {¶ 22} In Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, syllabus, the Ohio Supreme Court held: "Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Further, where the purported settlement agreement is "extrajudicial" or entered into outside the presence of the court, the court must first conduct an evidentiary hearing to determine whether the parties entered into a binding agreement.Irwin Flickinger v. Bruce L. Christy Co., L.P.A. (1989),61 Ohio App.3d 131, 134-135.
 {¶ 23} We note that as a general matter, a party is not entitled to a jury trial when he or she seeks specific performance. Gleason v. Gleason (1991), 64 Ohio App.3d 667,671, citing Pierce v. Stewart (1899), 61 Ohio St. 422. However, the court does have the power to order a jury trial so long as neither party objects. Id.
 {¶ 24} In the instant case, we find that the trial court did not err by denying appellants' request for a jury trial. Appellees opposed appellants' request for a jury trial and the court held a thorough evidentiary hearing on the issue of the settlement agreement.
 {¶ 25} Appellants also contend that because the judge participated in prior settlement negotiations, he was precluded from acting as the factfinder on the motion to enforce the settlement pursuant to Canon 3(E)(1)(a) of the Code of Judicial Conduct.[2] Prior to the start of the October 16, 2001 hearing on the motion to enforce the settlement agreement, the judge summarized his recollection of the negotiations as follows:
 {¶ 26} "THE COURT: * * *. First of all, I don't remember if we had them on the Record. I don't remember. I have some specificity of recollection, but not a great deal. My specificity of recollection is that there was a sum of money, there was a possibility of wider litigation, and litigation becoming more complicated and more protracted; and in that I encouraged both sides to make some adjustment to their position. I also have a specific recollection of saying I don't care about outcomes, I care about process and I care about resolution. * * *.
 {¶ 27} "* * *.
 {¶ 28} "THE COURT: I don't recall it. I don't recall opining any firm way other than say outcomes can be different than expectations, and encouraging people to adjust their positions. The only information I believe I may have taken, which I think you may be referring to, is action that may or may not be taken by a disciplinary counsel, which is part of the case. That was clearly discussed. Now that's my recollection of it as best I can. I don't remember the details. $25,000 is the number that sticks in my mind. Other than that, if I've misspoke, please disagree with me.
 {¶ 29} "MR. PHEILS: I think that's a pretty good summary, Your Honor."
 {¶ 30} It is clear from the hearing transcript that the judge had very little recollection of the evidentiary facts of the proceeding. Further, appellants are not claiming that the judge was biased or prejudiced in any way. Accordingly, we find that the trial court did not err by remaining in the role of factfinder.
 {¶ 31} Based on the foregoing, we find that appellants' first assignment of error is not well-taken.
 {¶ 32} Appellants next argue, in their second assignment of error, that the trial court erroneously determined that Mr. Pheils had the authority to agree to a settlement on his wife's behalf when counsel represented her. Conversely, appellees contend that based upon Mr. Pheils' actions, they reasonably concluded that he was acting on his wife's behalf.
 {¶ 33} We agree that no presumption of agency between a husband and wife exists merely based upon their marital relationship. "However, an agency relationship may be created either by an express grant of authority, by implication, or by agency by estoppel." (Citations omitted.) McSweeney v. Jackson
(1996), 117 Ohio App.3d 623, 630. In order to create an agency by estoppel, the principal must hold the agent out to the public as possessing authority to act on the agent's behalf, or the principal must knowingly permit the agent to act as though such authority exists. Id., quoting Borsick v. State Farm Fire Cas.Ins. Co. (Mar. 31, 1993), 6th Dist. No. E-92-26, reversed on other grounds (1993), 68 Ohio St.3d 81. See Coldwell v. AllstateIns. Co. (June 18, 1999), 3d Dist. No. 3-99-03.
 {¶ 34} In the present case, David Pheils represented his wife from the 1994 commencement of the underlying case until September 1999, when her counsel entered an appearance. During the October 19, 2000 pretrial, settlement negotiations were held absent JoAnne Pheils and her counsel. According to the deposition of appellees' former attorney, Jodie Stearns, the trial judge indicated that Mr. Pheils' desire to settle the case stemmed from health concerns. The settlement offer made at the courthouse was $20,000. Ms. Stearns indicated that she would speak to her clients and Mr. Pheils stated that he would discuss it with his wife.
 {¶ 35} That evening, Mr. Pheils telephoned Ms. Stearns with a $25,000 offer which would remain open for 24 hours. Ms. Stearns testified that she spoke with her clients and faxed Mr. Pheils a written acceptance and release; the letter also contained a condition precluding Mr. Pheils or any of his associates from representing any person or entity against appellees in relation to the subject property.[3] On the morning of October 20, 2000, Mr. Pheils faxed the letter back to Ms. Stearns with the handwritten notation: "Agreed on my and my wife's behalf 10/20/00 @ 8:17 A.M. [signed] David R. Pheils."
 {¶ 36} During JoAnne Pheils' July 28, 2001 deposition, she stated that she was aware of settlement negotiations between her husband, Ms. Stearns, and appellees and of the alleged settlement. Though she felt that $25,000 was "way too much," she agreed to the amount in exchange for being finished with the case. Mrs. Pheils stated that she would assume that the settlement would have included mutual releases, but because the details were not agreed upon there was no settlement.
 {¶ 37} Based on the foregoing, we find that Mr. Pheils' representation that he was acting on his wife's behalf coupled with her subsequent ratification established an agency by estoppel. Mrs. Pheils stated that she agreed with the idea of the settlement; she disputes the specific terms of the agreement. Accordingly, appellants' second assignment of error is not well-taken.
 {¶ 38} Appellants' third assignment of error avers that the trial court erred by refusing to dismiss Mrs. Black's claim and subsequently entering a judgment in favor of her estate. Appellants argue that Mrs. Black's abuse of process claim extinguished upon her death. Appellants also contend that the court should have dismissed Mrs. Black's claim due to her failure to appear at a scheduled deposition. Conversely, appellees assert that because Mrs. Black agreed to the settlement of the claim prior to her death, the enforcement of the settlement is contractual in nature and survives her death. Appellees also state that the court did not abuse its discretion by refusing to dismiss Mrs. Black's claim because she failed to attend the scheduled deposition.
 {¶ 39} Appellants correctly state that Mrs. Black's abuse of process claim, a non-personal injury tort claim, abated upon her death. See Lewis v. City of St. Bernard (1952),157 Ohio St. 549. However, "a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation * * *."Continental W. Condominium Unit Owners Assn. v. Howard E.Ferguson, Inc. (1996), 74 Ohio St.3d 501, 502. Generally, contract claims survive a party's death and may be reinstated by the personal representative of the decedent's estate. The Estateof Lamont Cattano v. High Tough Homes, Inc., 6th Dist. No. E-01-022, 2002-Ohio-2631. Accordingly, because Mrs. Black both agreed to the settlement and filed a motion to enforce the settlement prior to her death, the ability to enforce the agreement did not abate following her death.
 {¶ 40} Appellants also believe that the trial court erred when it denied their motion to dismiss Mrs. Black as a party for her failure to attend a scheduled deposition.
 {¶ 41} We first note that discovery sanctions are within the discretion of the trial court. Restivo v. Fifth Third Bank ofNorthwestern Ohio, N.A. (1996), 113 Ohio App.3d 516, 521, citingToney v. Berkemer (1983), 6 Ohio St.3d 455, 458. Thus, the standard of review an appellate court must employ when reviewing the court's handling of discovery matters is whether the court abused its discretion. Id. An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable decision. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 42} Civ.R. 37(D) provides, in part:
 {¶ 43} "If a party or an officer, director, or a managing agent of a party or a person designated under Rule 30(B)(5) or Rule 31(A) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition after being served with a proper notice, * * * the court in which the action is pending on motion and notice may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (a), (b), and (c) of subdivision (B)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."
 {¶ 44} Civ.R. 37(B)(2)(c) provides that a trial court may dismiss a party's complaint if the party fails to comply with a discovery order. Dismissal may be imposed as a discovery sanction where there is a showing of willfulness or bad faith on the part of the party failing to comply with the discovery order. Toney,
supra, at 458. Dismissal of a party's complaint is a harsh sanction reserved only where "the conduct of the plaintiff is so negligent, irresponsible, contumacious or dilatory as to outweigh the policy that disposition of litigation should be upon its merits." Evans v. Smith (1991), 75 Ohio App.3d 160, 163.
 {¶ 45} The facts of the present case do not suggest that Mrs. Black's failure to appear was a deliberate or willful act. Newly appointed counsel, as evidenced by his July 10, 2001 letter confirming the depositions of Mr. Black, the Pheils', and Jodie Stearns, was not aware that Mrs. Black's deposition was also to be taken. Testimony presented at the hearing evidenced that Mrs. Black was very ill on the deposition date; she died just days thereafter.
 {¶ 46} Accordingly, we find that the trial court did not abuse its discretion by denying appellants' motion to dismiss Mrs. Black's claim. Appellants' third assignment of error is not well-taken.
 {¶ 47} In appellants' fourth assignment of error, they argue that the trial court erred in finding that an enforceable settlement agreement was reached. Appellants contend that because there was a dispute as to the settlement terms, there was no meeting of the minds. Appellees counter that because the essential terms were agreed upon, there was an enforceable settlement agreement.
 {¶ 48} As set forth above, a settlement agreement is a particular type of contract. Noroski v. Fallet (1982),2 Ohio St.3d 77, 79. Contract law dictates that in order to form a valid contract, there must be a meeting of the minds of the parties as to the essential terms of the contract, and there must be an offer on one side and an acceptance on the other. Id.; Kostelnikv. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. A settlement agreement requires no more formality than any other contract; it may be written or oral, signed or unsigned. Kostelnik at ¶ 15.
 {¶ 49} "`To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear,' and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists.Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, 376, 377,683 N.E.2d 337. However, `[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. In spite of its defects, language renders a practical service. In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make.' 1 Corbin on Contracts (Perillo Rev. Ed. 1993) 530, Section 4.1." Id. at ¶ 17.
 {¶ 50} The parties do not dispute their agreement that appellants would pay appellees the sum of $25,000 for the dismissal of their complaint. Appellants, however, contend that because the settlement was dependent upon conditions precedent, one of which was illegal, there was no enforceable settlement. Appellants also contend that there was no meeting of the minds as to the terms of the settlement.
 {¶ 51} The October 19, 2000 letter faxed to Mr. Pheils from appellees' then-attorney Jodie Stearns, provided:
 {¶ 52} "After a great deal of discussion and thought, my clients, Dr. and Mrs. George Black, accept your offer of settlement in the above-referenced case in the amount of $25,000.00. This acceptance is expressly conditioned upon the execution and exchange of mutual releases and specifically a release from you and Joanne Pheils forever relinquishing any and all claims against the Blacks concerning their ownership, use or improvement of the subject property. Said Release must also contain language precluding you or your law firm from representing, in any capacity, any person or entity against the Blacks relative to the Blacks' ownership, use or improvement of the subject property."
 {¶ 53} As to the above-quoted letter, appellants claim that the execution of the releases was never accomplished and that the language precluding Mr. Pheils or his law firm from representing any person or entity against the Blacks is violative of DR2-108(B).[4] Appellees contend that legal custom and practice provides that it is not necessary for releases to be signed at the time of settlement. Further, while they do not dispute that the provision restricting Mr. Pheils' representation was invalid, they contend that it was voluntarily abandoned and may be severed from the agreement.
 {¶ 54} Upon review, we find that the fact that the releases had not been executed at the time of the agreement does not prevent enforcement of the agreement. See Palmer v. KaiserFoundation Health (1991), 64 Ohio App.3d 140. Additionally, appellees presented expert testimony at the October 16, 2001 hearing on their motion to enforce the settlement agreement as to the usual and customary release provisions used by attorneys negotiating settlements in Northwest Ohio.
 {¶ 55} As to the provision improperly restricting Mr. Pheils and his law firm, the condition was abandoned by appellees. Further, the doctrine of severability provides that "where a contract consists of several agreements, one of which is illegal, the illegal portion can be severed if it does not destroy the symmetry of the contract." (Citation omitted.) Vincent v. SantaCruz (1982), 98 Nev. 338, 341, 647 P.2d 379, 381. The purpose of the settlement, payment of money to end litigation, was not altered by deletion of the restriction
 {¶ 56} We further find that a meeting of the minds occurred as to the essential terms of the agreement, again, to settle the matter for $25,000 and release the parties from further litigation in the matter. Accordingly, we find that appellants' fourth assignment of error is not well-taken.
 {¶ 57} Appellants' fifth assignment of error asserts that the trial court erroneously awarded appellees' attorney fees upon a finding of frivolous conduct under R.C. 2323.51. Pursuant to R.C.2323.51(B)(1),[5] a court may award reasonable attorney fees to any party in a civil action adversely affected by frivolous conduct.
 {¶ 58} In this case, the court found "harassing" conduct, R.C. 2323.51(A)(2)(a)(i), and "legally groundless" conduct, R.C.2323.51(A)(2)(a)(ii). This court has recently followed the First Appellate District's holding that different standards of review are applied to each. David v. Kaiser, 6th Dist. No. L-03-1315, 2004-Ohio-3149, ¶ 6, following Riston v. Butler (2002),149 Ohio App.3d 390. Under Riston, an abuse of discretion standard is applied to the finding of "harassing" conduct while a "legally groundless" finding is a question of law and reviewed de novo. Id. at 397-398.
 {¶ 59} As to R.C. 2323.51(A)(2)(a)(i), the trial court found: "[D]efendants' conduct in refusing to perform the settlement agreement unless indemnity and confidentiality provisions were included in the agreed upon releases obviously served merely to harass or maliciously injure plaintiffs, and that plaintiffs were adversely affected by that conduct."
 {¶ 60} Upon review, we cannot say that the trial court abused its discretion when it concluded that appellants' refusal to abide by the settlement was merely to harass or injure appellees. The trial judge in this matter was appointed in early 2001, and, throughout the proceedings, had ample opportunity to observe the conduct of the parties.
 {¶ 61} Reviewing, de novo, the court's findings under R.C.2323.51(A)(2)(a)(ii), we find that when looking solely at the actions of Mr. Pheils, divorced from the lengthy and acrimonious facts of this case, we cannot say that his defense to the settlement agreement was "legally groundless." Thus, relief was not warranted under this section. However, because we affirmed the court's finding of "harassing" conduct, we find that the trial court did not err in awarding attorney fees based on this finding. Appellants' fifth assignment of error is not well-taken.
 {¶ 62} Appellants' sixth and final assignment of error asserts that the trial court erred in granting appellees' motion for partial relief from judgment under Civ.R. 60(B)(5) and by granting an evidentiary hearing on the motion. Appellants argue that this court's remand of the matter was limited only to granting relief from judgment, not to change the trial court's opinion.
 {¶ 63} It is well settled that a motion for relief from judgment pursuant to Civ.R. 60(B) is left to the sound discretion of the trial court, and the court's ruling will not be disturbed absent a showing of abuse of discretion. Griffey v. Rajan
(1987), 33 Ohio St.3d 75, 77. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore, 5 Ohio St.3d at 219.
 {¶ 64} Civ.R. 60(B) sets forth the following grounds for relief from judgment:
 {¶ 65} "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."
 {¶ 66} In order to obtain relief from judgment pursuant to Civ.R. 60(B), a movant must demonstrate that:
 {¶ 67} "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds for relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE Automatic Elec., Inc. v. ARC Indus., Inc.,
47 Ohio St.2d at paragraph two of the syllabus.
 {¶ 68} These requirements must be shown by "operative facts" which demonstrate the movant's entitlement to relief. RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 21. "Neither Civ.R. 60(B) nor any decision from the Supreme Court of Ohio requires a movant to submit evidentiary material in support of the motion. However, in its motion or memorandum in support, a movant must do more than make bare allegations of entitlement to relief." Your Financial Community of Ohio, Inc. v. Emerick
(1997), 123 Ohio App.3d 601, 607. See, also, Kay v. MarcGlassman, Inc. (1996), 76 Ohio St.3d 18, 20. Moreover, if the material submitted by the movant does not provide operative facts which demonstrate that relief is warranted, the court may deny the motion without conducting a hearing. McBroom v. McBroom,
6th Dist. No. L-03-1027, 2003-Ohio-5198, ¶ 39.
 {¶ 69} In the instant case, we find that appellees' memorandum in support of their motion for relief from judgment contained sufficient operative facts describing why relief should be granted, thus, warranting an evidentiary hearing on the motion. Upon review of the court's September 5, 2003 judgment granting relief, we cannot say that the trial court abused its broad discretion under Civ.R. 60(B). Accordingly, appellants' sixth assignment of error is not well-taken.
 {¶ 70} On consideration whereof, we find that substantial justice was done the party complaining, and the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellants are ordered to pay the court costs of this proceeding.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Lanzinger, J. and Singer, J. Concur.
[1] Appellants' 1994 complaint alleged that appellees wrongfully used a portion of their property, adjacent to appellants', as a landfill, which diverted water onto appellants' property, causing damage.
[2] {¶ a} Canon 3(E) provides, in part:
{¶ b} "(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
{¶ c} "(a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding; * * *."
[3] This provision is discussed, infra, in relation to appellants' fourth assignment of error.
[4] DR2-108(B) provides: "In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law."
[5] R.C. 2323.51(B)(1) provides, in part: "[A]t any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * *, the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. The award may be assessed as provided in division (B)(4) of this section."